# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 1:24MJ516-1
)
Information Associated with Cellular Telephone Assigned )
Call Number (347) 764-8824, That Is Stored at Premises )
Controlled by T-Mobile US, Inc. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of ____New Jersey____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 932 | Straw purchasing of firearms |
| 18 U.S.C. 933 | Trafficking in firearms |

The application is based on these facts:
See Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.*

*Applicant's signature*

Jonah E. James, Special Agent
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 11/27/2024 1:59 pm

*Judge's signature*

City and state: Durham, North Carolina       Joe L. Webster, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| In the Matter of the Search of:<br>Information Associated with Cellular Telephone Assigned Call Number (347) 764-8824, That Is Stored at Premises Controlled by T-Mobile US, Inc. at 4 Sylvan Way, Parsippany, NJ 07054 | Case No. 1:24MJ516-1 |

## AFFIDAVIT IN SUPPORT OF A SEARCH AND SEIZURE WARRANT

I, Jonah E. James, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (347) 764-8824, herein after the SUBJECT TELEPHONE, that is stored at premises owned, maintained, controlled, or operated by T-Mobile US, Inc. ("T-Mobile"), a wireless telephone service provider, headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(b)(1)(A) and 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of

Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and as such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. §§ 2510(7). Therefore, I am empowered to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. §§ 2516.

3. I have been employed as a SA with the ATF since May 2021. As an ATF SA, I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center and specialized training in the fields of firearms, explosives and arson, and Federal law and regulations pertaining thereto at the ATF National Academy. Since 2024, I have been assigned to the Raleigh Group I, where my duties include the investigation and enforcement of violations of firearms laws, narcotics laws, and other associated violations encountered in the course of these duties. For my first three years with ATF, I was assigned to Atlanta Group I, which specialized in investigating domestic, both intrastate and interstate, and international firearms trafficking, as well as the burglary of firearms from Federal Firearms Licensees ("FFLs"). Prior to becoming an ATF SA, I was a SA for the Air Force Office of Special Investigations for four years, during which time I conducted

2

investigations involving drug use and distribution, aggravated assaults, sexual assaults, and child pornography, among other violations of the Uniform Code of Military Justice ("UCMJ") and Federal law. I also hold a bachelor's degree in criminology from West Virginia University in Morgantown, West Virginia.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth herein, I submit there is probable cause to believe that violations of 18 U.S.C. §§ 932 [Straw Purchasing of Firearms] and 933 [Trafficking in Firearms] have been committed by Eric YATES. As a result, probable cause also exists to search the information described in Attached A for evidence of these crimes further described in Attachment B.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711. 18 U.S.C. §§ 2703(b)(1)(A) & 2703(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. §§ 2711(3)(A)(i).

3

## FIREARMS TRAFFICKING TERMS

7. **Firearms Trafficking** - The movement of guns from legal to illegal streams of commerce that occur within states, across state lines, and across international borders. Firearms trafficking involves the movement of guns across state lines before their use in a crime. According to ATF data, from the beginning of 2019 to the beginning of 2024, 22,214 firearms were purchased in North Carolina and were recovered and traced in another state. Approximately 54% of those firearms were recovered and traced in just six states – South Carolina (approximately 12.8%), New York (approximately 12.3%), Virginia (approximately 7.8%), Maryland (approximately 7.2%), Florida (approximately 7.1%), and New Jersey (approximately 6.9%). During that same timeframe, an additional 765 firearms were purchased in North Carolina and were recovered and traced outside of the United States. Approximately 77% of those firearms were recovered and traced in only two countries – Mexico (approximately 55%) and Canada (approximately 22%). The flow of guns tends to move from states with weaker gun laws, considered "source states," to those with stronger gun laws. These states are also a source of firearms for international smugglers.

8. **Federal Firearms Licensee ("FFL")** - Any person, partnership, or business entity holding a valid license issued by ATF under the authority of 18 U.S.C. Chapter 44 that allows them, or their employees, to "engage in the

business" of dealing, manufacturing, importing, or repairing firearms. The term also includes those persons who are pawnbrokers dealing in firearms. By law, all FFLs must keep records of their firearms transactions.

9. **ATF Form 4473, Firearms Transaction Record** - A form completed and maintained by all FFLs to document the transfer of firearm(s) to an unlicensed individual. The form is completed by both the purchaser and the FFL and contains identifying information concerning the purchaser, firearm, date of transfer, and FFL number. The primary purpose of the form is to determine the eligibility of the purchaser to legally acquire and possess firearms.

10. **National Instant Criminal Background Check System (NICS)** - A national records system, operated by the FBI, that checks the background of every unlicensed person during the process of acquiring a firearm from an FFL, for the purpose of preventing prohibited persons from acquiring firearms illegally.

11. **Time to Sale** - The period of time, measured in days, between a retail FFL's receipt of a firearm and the sale or transfer of that firearm. A short time to sale, particularly when a number of inexpensive or identical handguns are involved, may indicate the federally licensed firearms dealer is specifically ordering the firearms at the request of an illegal trafficker or is directly involved with illegal trafficking.

5

12. **Time to Crime ("TTC")/Time to Recovery** - The period of time, measured in days, between a firearm's acquisition from a retail market and law enforcement's recovery of that firearm during use, or suspected use, in a crime. A short time to crime usually means the firearm will be easier to trace; however, it is not necessarily an indicator of firearms trafficking. When several short time-to-crime traces involve the same individual or FFL, or when a short time-to-crime trace is coupled with multiple sales information, this may be an indication of illegal trafficking activity.

13. **Straw Purchase** - The acquisition of firearm(s) from an FFL by an individual (the "straw"), for the purpose of concealing the identity of the true intended receiver of the firearm(s). The "actual purchaser" is often the person who is prohibited from purchasing who seeks to obtain the firearm through the "straw purchaser."

14. **National Tracing Center ("NTC")** - The only facility/operation in the world that traces the history of firearms recovered in crimes and from juveniles for any Federal, State, or local law enforcement agency in the United States or abroad.

PROBABLE CAUSE

15. On or about October 7, 2023, Carmela Distefano was arrested by the Highlands Police Department in Highlands, NJ for the unlawful possession of a handgun and possession of a defaced firearm, among other charges. The

6

Ruger, model EC9S, 9mm pistol, S/N: 462-24100 in Distefano's possession when she was arrested was originally purchased on or about September 16, 2022, by Sametta CUTLER at Rock City Guns LLC, an FFL in Roxboro, NC, in the Middle District of North Carolina. That firearm had a TTC of 387 days.

16. I reviewed ATF records pertaining to CUTLER. According to ATF multiple sale summaries,[1] CUTLER had purchased at least (22) firearms in at least (8) separate sales from October 2021 through September 2023, (20) of which were purchased from Rock City Guns LLC in Roxboro, North Carolina which is in the Middle District of North Carolina. Approximately (16) of those firearms, including the firearm recovered from Distefano, were purchased in a shorter six-month period spanning from March 2022 through September 2022. ATF records indicated that, on many of the occasions CUTLER purchased firearms, the firearms she selected were of similar makes and/or calibers. For example, (13) of the firearms were Taurus 9mm pistols, (3) were Ruger 9mm pistols, and (6) were Ruger .380 cal pistols. Based on my training and experience, an individual's repetitive purchase of firearms of the same make

---

[1] The Gun Control Act (GCA) of 1968 requires FFLs to send a report to ATF when there is a sale of two or more handguns to the same purchaser within five consecutive business days of each other. The information contained within this "Report of Multiple Sale" is accessible by ATF personnel in a "multiple sale summary."

and/or caliber is an indicator of straw purchasing and firearms trafficking activity.

17. On May 21, 2024, ATF SAs Robert Moraca and Matthew LaVecchia of the ATF Trenton, NJ office interviewed CUTLER in a recorded, non-custodial interview at CUTLER's residence in Durham, NC. CUTLER stated the following of note:

   a. CUTLER stated she had a male friend who would go with her to FFLs when she purchased firearms. She identified that friend as Eric YATES. CUTLER stated YATES was present for every purchase of firearms CUTLER made. CUTLER recalled purchasing firearms from Rock City Guns, but she could not recall any other FFLs from which she had purchased.

   b. CUTLER told agents she knew YATES was from New York and was a felon and therefore was not allowed to possess guns.

   c. CUTLER stated the first time she purchased firearms with YATES was in 2020. Agents asked CUTLER if she had ever been threatened to purchase firearms, and she replied in the negative.

   d. CUTLER provided the call number for the SUBJECT TELEPHONE for YATES.

8

e. Eventually, CUTLER admitted the firearms she had purchased were for YATES and she knew YATES was taking them to the New York/New Jersey area.

f. CUTLER stated YATES paid her some money for purchasing the firearms for him, approximately $150.00 in total.

g. CUTLER stated YATES alluded to the fact that, if one of the firearms she had purchased were recovered in a crime, she would not get in trouble. CUTLER further explained YATES would obliterate the serial numbers of each firearm.

h. CUTLER stated YATES had a friend named "Manny," who was "top in the game." CUTLER provided the phone number 213-322-6639 for "Manny."

18. On November 25, 2024, I queried the call number for the SUBJECT TELEPHONE in multiple law enforcement databases and determined the following:

a. In 2017, Durham (NC) Police Department collected the call number for the SUBJECT TELEPHONE when they made contact with YATES as a witness in a motor vehicle theft case.

b. In 2019, YATES provided the call number for the SUBJECT TELEPHONE to a pawn shop in Durham, NC when conducting a transaction.

9

c. A law enforcement database associated the call number for the SUBJECT TELEPHONE with YATES from August 2016 to November 2024.

   d. The SUBJECT TELEPHONE utilizes the T-Mobile cellular network.

## HISTORICAL CELLULAR TELEPHONE RECORDS

19. Based on my training and experience, I have learned that individuals who participate in crimes often use cell phones and online tools to facilitate and plan their criminal activity and to avoid detection by law enforcement. Likewise, I have learned that individuals commonly use cell phones before, during, and after criminal activity to coordinate the commission of those crimes.

20. In my training and experience, I have learned that T-Mobile is a telecommunications company that provides cellular telephone access to the public. Further, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method/s of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the

10

wireless service, such as records about calls, text messages, and data transmissions sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crime/s under investigation because the information can be used to identify the SUBJECT TELEPHONE's user or users and may assist in the identification of co-conspirators and/or victims.

21. In addition, I know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the physical location of the cellular telephones to which they provide service. I know that T-Mobile can collect cell site data (also known as tower/face or cell tower/sector information).

22. Cell site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular phone and, in some cases, identifies the sector (i.e., faces of the towers) to which the phone connected. Even in urban areas, these towers are often a half mile or more apart and can be 10 or more miles apart in rural areas. Further, the tower closest to a wireless device does not necessarily serve every call made to or from that device. I know that for each transmission a cellular device makes, its wireless service provider can typically determine: (a) the date and time of the communication; (b) the telephone numbers involved, if any; (c)

11

the cell tower to which the customer connected at the beginning of the communication; (d) the cell tower to which the customer connected at the end of the communication; and (e) the duration of the communication. I also know that wireless providers (such as T-Mobile), usually collect and retain cell site data for cellular devices to which they provide service in the normal course of their business.

23. Finally, I know that many cell phone service providers in the ordinary course of business maintain more precise location information that tends to approximate a cell phone's location and/or range from accessed cell towers and sectors during a call or data transmission. In the telecommunication industry, this type of information is generically known as "advance timing data" – but is also referred to as Network Event Location Operating System, per call measurement, Real Time Tool/RTT, or timing advance data.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2703(c)(1)(A) as well as Federal Rule of Criminal Procedure 41. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 932 [Straw Purchasing of Firearms] and 933 [Trafficking in Firearms] have been committed by Eric YATES. There is also probable cause to search the

records described in Attachment A for evidence of this crime, as further described in Attachment B.

25. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within their possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,
/s/ Jonah E. James
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 27th day of November, 2024, at 1:59 p.m.

_____
Hon. Joe L. Webster
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with a certain cellular telephone assigned call number (347)764-8824, that is stored at premises owned, maintained, controlled, or operated by T-Mobile US, Inc., a wireless telephone service provider, headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

## ATTACHMENT B

## Particular Things to be Seized

### I. Information to be disclosed by T-Mobile US, Inc.

To the extent that the information described in Attachment A is within the possession, custody, or control of T-Mobile US, Inc. ("T-Mobile"), including any information that has been deleted but is still available to T-Mobile or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), T-Mobile is required to disclose to the government the following information pertaining to a certain cellular telephone assigned call number (347) 764-8824, as more fully described in Attachment A, for the time period from November 27, 2022, through November 27, 2024:

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
3. Local and long distance telephone connection records and/or call, text message, and data transmission detail records;
4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol addresses) associated with those sessions;
5. Length of service (including start date) and types of service utilized;
6. Telephone or instrument numbers (including MAC addresses, Electronic

1

Serial Numbers, Mobile Electronic Identity Numbers, Mobile Equipment Identifier, Mobile Identification Numbers, Subscriber Identity Modules, International Mobile Subscriber Identifiers, or International Mobile Equipment Identities);

7. Other subscriber numbers or identities (including the registration Internet Protocol address);

8. Means and source of payment for such service (including any credit card or bank account number) and billing records;

9. Historical cell site/sector data, including: (a) the cell sites to which the SUBJECT TELEPHONE sent its signal when a call, text message, or data transmission was made, placed, or received; (b) the cell sites through which the call or data transmission were routed when the call or data transmission ended; and (c) the cell sites during a call or data transmission, if available; and

10. Historical advance timing data (also called Network Event Location Operating System, per call measurement, Real Time Tool/RTT, or timing advance data) stored in the ordinary course of business that tends to approximate the SUBJECT TELEPHONE's location and/or range from accessed tower and sectors.

II. **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of

2

violations of 18 U.S.C. §§ 932 [Straw Purchasing of Firearms] and 933 [Trafficking in Firearms] committed by Eric YATES. and T-Mobile number (347) 764-8824 during the period between November 27, 2022, through November 27, 2024, as follows:

1. The identity of the person(s) who created and/or used the account associated with the above referenced cellular telephone number, including records that help reveal the whereabouts of such person(s); and

2. Evidence indicating the geographic location of the cellular device associated with the above referenced cellular telephone number during the relevant time frame; and

3. Evidence indicating how and when the above reference cellular telephone number was used to determine the chronological context of cellular device use, account access, and events during the relevant time frame; and

4. Evidence indicating communications between YATES and CUTLER, and YATES and "Manny," and YATES and any other unidentified co-conspirators.

3

Case 1:24-mj-00516-JLW   Document 1   Filed 11/27/24   Page 18 of 18